UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **COBY QUINTON CEASER** | : | **DOCKET NO. 2:21-cv-4084** |
| **DOC # 613641** | | **SECTION P** |
| **VERSUS** | : | **JUDGE JAMES D. CAIN, JR.** |
| **TIM HOOPER** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is an original and amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by petitioner Coby Quinton Ceaser (Petitioner), who is proceeding *pro se* and *in forma pauperis* in this matter. Docs. 1, 5.  Petitioner is an inmate in the custody of the Louisiana Department of Public Safety and Corrections and is currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.  The State opposes the petition (doc. 15), and the Petitioner filed a reply to the State's opposition (doc. 16).  The petition is now ripe for review.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636. For reasons stated below, **IT IS RECOMMENDED** that all claims be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.
### BACKGROUND

#### A. Conviction

On June 27, 2013, a Fourteenth Judicial District Court jury found petitioner guilty of one count of second-degree murder in the shooting death of his stepfather.  On July 15, 2013, he was sentenced to life imprisonment in the custody of the Louisiana Department of Corrections.  Doc. 1, p. 1.

## B. Direct Appeal

Petitioner, through counsel, timely filed an appeal in the Louisiana Third Circuit Court of Appeal, raising the sole assignment of error that the State failed to present sufficient evidence to support the verdict of second-degree murder. *State v. Ceasar*, 14-141 (La. App. 3 Cir 10/01/14), 149 So. 3d 301. His sentence and conviction were affirmed by the Third Circuit on October 1, 2014. *Id*. The Louisiana Supreme Court denied the petitioner's application for supervisory review on August 28, 2015. *State v. Ceasar,* 2014-2228 (La. 08/28/15), 175 So. 3d 961.

## C. State Collateral Review

The petitioner filed a pro se application for post-conviction relief in the state district court on August 31, 2016, raising the following claims: (1) prosecutorial misconduct; (2) ineffective assistance of trial counsel in preventing him from testifying; (3) he was denied his right to have the assistance of counsel at his arraignment; (4) he was deprived of his right to present a complete defense; and (5) ineffective assistance of appellate counsel in only raising one claim on direct appeal. Doc. 34, att. 4, pp. 72-114. The state district court denied the application on September 19, 2016. Doc. 13, att. 7, pp. 86-87. Petitioner sought writs in the Third Circuit Court of Appeal on or about November 5, 2016. *Id*. at pp. 94-122. In his brief he alleged: (1) trial court erred in failing to address his claim regarding prosecutorial misconduct because it was outside the purview of La. Code Crim. P. 930.3; (2) trial court erred in denying his claim of ineffective assistance of counsel that resulted when his attorney prevented him from testifying at trial after hearing the prosecutor's threat to introduce investigative reports about sexual abuse allegations against him; (3) trial court erred in concluding he was not denied the assistance of counsel at his arraignment; (4) trial court erred in again finding that he failed to set forth a valid claim under La.Code Crim.P. art. 930.3, based on the trial judge's refusal to allow defense counsel to introduce evidence of the

victim's dangerous character which he claimed resulted in him being deprived of a fair trial; and (5) appellate counsel's performance was deficient. *Id*. The Third Circuit remanded the claims that trial court erred in failing to address his claim regarding prosecutorial misconduct and in refusing to allow defense counsel to introduce evidence of the victim's dangerous character, because these claims was outside the purview of La. Code Crim. P. 930 and denied the remaining claims. *State v. Ceasar*, 16-824 (La. App. 3 Cir 07/12/17), 224 So. 3d 1226. All claims were ultimately disposed of by the Louisiana state courts as of October 19, 2021, when the Louisiana Supreme Court denied the Petitioner's last application for collateral supervisory review. *State v. Ceasar*, 2021-00970 (La. 10/19/21), 326 So. 3d 260.

### D. Federal Habeas Petition

The instant petition was filed in this court on November 15, 2021. Doc. 1. On May 20, 2022, the undersigned ordered the State of Louisiana to file a response to petitioner's writ of habeas corpus (doc. 6), which it did on August 8, 2022 (doc. 13) and August 12, 2022 (doc. 15). On August 17, 2022, the petitioner filed a Reply to the State's Opposition. Doc. 16.

Petitioner asserts six claims which he believe entitle him to relief: (1) that the Louisiana state courts misapplied the *Jackson* standard of review when it denied Petitioner's claim that the State's evidence was insufficient to support the jury's verdict; (2) that Petitioner's trial was rendered fundamentally unfair as a result of prosecutorial misconduct in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; (3) that Petitioner was denied the effective assistance of counsel at trial in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; (4) that the Petitioner was denied his right to counsel at his arraignment in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; (5) that Petitioner was deprived of his right to present a complete

defense in violation of the Sixth and Fourteenth Amendments to the United States Constitution; and (6) that Petitioner was denied the effective assistance of counsel on appeal in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

## II.
## LAW

### A. Timeliness

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. *Id.* The time during which a properly filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. *Id.* at § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Rhines v. Weber*, 125 S.Ct. 1528 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B.  Exhaustion and Procedural Default

Exhaustion and procedural default are both affirmative defenses that may be considered waived if not asserted in the respondent's responsive pleadings. *E.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any assertions by respondent under these doctrines, in addition to conducting our own review.

### 1.  Exhaustion of State Court Remedies

The federal habeas corpus statute and decades of federal jurisprudence require that a petitioner seeking federal habeas corpus relief exhaust all available state court remedies before filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). The exhaustion requirement is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana, the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a

procedurally correct manner, based on the same general legal theories and factual allegations that he raises in his § 2254 petition.

### 2. Procedural Default

When a petitioner's claim is dismissed by the state court based on state law grounds, and those grounds are independent of the federal question and adequate to support the judgment, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or that review is necessary "to correct a fundamental miscarriage of justice." *Coleman v. Thompson*, 111 S.Ct. 2546, 2553–54, 2564 (1991) (internal quotations omitted). Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default) or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). This is not a jurisdictional matter, but instead a doctrine "grounded in concerns of comity and federalism." *Trest v. Cain*, 118 S.Ct. 478, 480 (1997). The grounds for traditional procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989). To serve as adequate grounds for a federally cognizable default, the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

### C. General Principles

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs habeas corpus relief. The AEDPA limits how a federal court may consider habeas claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

To overcome AEDPA's relitigation bar, a state prisoner must shoehorn his claim into one of its narrow exceptions. *Langley v. Prince*, 962 F.3d 145, 155 (5th Cir. 2019). As relevant here, he must show the state court's adjudication of the claim "resulted in a decision that was [1] contrary to, or [2] involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.*; 28 U.S.C. § 2254(d)(1).

The first exception to the relitigation bar—the "contrary to" prong—is generally regarded as the narrower of the two. *Id.* A state-court decision is "contrary to" clearly established federal law only if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if" it resolves "a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* (*citing Terry Williams v. Taylor,* 120 S.Ct. 1495, 1523 (2000).

The other exception to § 2254(d)(1)'s relitigation bar is the "unreasonable application" prong, which is almost equally unforgiving. *Id.* at 156. The Supreme Court has repeatedly held that it is not enough to show the state court was wrong. *Id.*; *see also, Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010) ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." (quotation omitted)); *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007) ("The question under AEDPA is not whether a federal court believes

the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").  Rather, the relitigation bar forecloses relief unless the prisoner can show the state court was so wrong that the error was "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. (*citing Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (per curiam) (quotation omitted).  In other words, the unreasonable-application exception asks whether it is "beyond the realm of possibility that a fairminded jurist could" agree with the state court. *Id. (citing Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016) (per curiam); see *also Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018) (per curiam) (asking "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court" (quotation omitted)).

Overcoming AEDPA's relitigation bar is necessary, but not sufficient, to win habeas relief. Even after overcoming the bar, the prisoner still must "show, on de novo review, that [he is] 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Id.* (*citing Salts v. Epps*, 676 F.3d 468, 480 (5th Cir. 2012) (quoting 28 U.S.C. § 2254(a)); *see also Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("[A] habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review [under] § 2254(a).").

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III.
### APPLICATION

#### A. Timeliness

The Louisiana Supreme Court denied Ceaser's application for supervisory review on direct appeal on August 28, 2015.  His conviction became final on November 26, 2015, when his 90-day

window for seeking review in the United States Supreme Court expired. Sup. Ct. R. 13. Accordingly, **278 days** accrued against § 2244(d)'s one-year limitations period before he filed his application for post-conviction relief in the trial court on August 30, 2016. The limitations period was then tolled until the Louisiana Supreme Court's decision on October 19, 2021, and **24 days** accrued against the one-year limit before Petitioner filed his federal habeas petition November 12, 2021. Therefore only **302 days** have accrued against the one-year limit and the matter is timely.

### B. Exhaustion and Procedural Default

Finding that the application was timely, we next apply the doctrines of exhaustion of state court remedies and procedural default in order to determine whether we can proceed to the merits of the claim.

Upon our review of the appellate record, we find that he properly sought review on all issues at every level of the state court in his post-conviction proceedings. He has therefore exhausted his state court remedies.

In addressing the merits of the claim now raised in his federal habeas petition, the state court found no procedural defects and denied the claim on the merits. Therefore, we find no grounds for procedural default

### C. Merits Consideration

**1. Petitioner claims that Louisiana state courts misapplied the *Jackson* standard of review when they denied his claim that the State's evidence was insufficient to support the jury's verdict.**

The Petitioner concedes that in addressing this claim as part of his direct appeal, the Louisiana Third Circuit Court of Appeal properly "identified the correct legal principle set forth in *Jackson v. Virginia*, 443 U.S. 307,99 S.Ct. 2781, 2789 (1979)." Doc. 1, att. 2, p. 9. He contends,

however, that the Louisiana state courts unreasonably applied that test in concluding that the prosecution met its burden of showing the Petitioner did not kill the victim in self-defense.

*Jackson v. Virginia*, 99 S. Ct. 2781 (1979), provides the appropriate United States Supreme Court standard for consideration of a claim of insufficient evidence. Under *Jackson*, a federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Id*. at 2789; *Williams v. Cain,* 408 F. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008). Thus, to determine whether the commission of a crime is adequately supported by the record, the Court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 99 S.Ct. at 2792, n. 16).

In *Young v. Guste*, 849 F.2d 970 (1988), the Fifth Circuit noted that a federal habeas court's sufficiency of the evidence analysis is restricted to "review of the record evidence adduced at trial." *Young*, 849 F.2d at 972. In *Coleman v. Johnson*, 132 S.Ct. 2060 (2012), the United States Supreme Court elaborated on claims made under *Jackson v. Virginia*:

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, 'it is the responsibility of the jury—not the court— to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v. Smith*, 132 S.Ct. 2, 4 (2011) (per curiam). And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'' *Ibid.* *(quoting Renico v. Lett*, 130 S.Ct. 1855, 1862, (2010)).

132 S.Ct. at 2062.  Thus, the standard to be applied by this Court when conducting a sufficiency of evidence analysis on federal habeas review is in fact "twice-deferential."  *Parker v. Matthews*, 132 S.Ct. 2148, 2152 (2012).

The sufficiency of the evidence analysis employed by Louisiana courts is the same one used by federal courts, *Jackson v. Virginia, supra*. *State v. Bishop,* 835 So.2d 434, 437 (La. 2003). Louisiana's Third Circuit Court of Appeal set forth the proper state and federal court analysis of a sufficiency of the evidence claim in *State v. Lambert*, 720 So.2d 724 (La. App. 3 Cir. 1998) where it stated:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King,* 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witness. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. *See King,* 436 So.2d 559, *citing State v. Richardson*, 425 So.2d 1228 (La.1983).

720 So.2d at 726-27

Where a federal habeas petition claims that the state court trial evidence is insufficient for a conviction, the "proper standard of review is whether any rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *Bujol v. Cain*, 713 F.2d 112, 114 (5th Cir. 1983) (citing *Jackson, supra)*.  "The *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) *citing Herrera v. Collins*, 113 S. Ct. 853, 861 (1993).  The federal habeas court must evaluate a sufficiency of the evidence challenge "with explicit reference" to the substantive state

law elements of the criminal offense and should "give great weight to the state court's determination." *Foy v. Donnelly*, 959 F.2d 1307, 1313-14 (5th Cir. 1992), quoting *Jackson v. Virginia,* 443 U.S. at 323 n. 16; *Gibson v. Collins*, 947 F.2d 780, 782, 786 (5th Cir. 1991); *Poretto v. Stalder*, 834 F.2d 461, 467 (5th Cir. 1987).

On federal habeas review, the substantive state law "defines the elements of the crime that must be proved." *Bujol*, 713 F.2d at 115.  In pertinent part, LSA-R.S. 14:30.1 defines second degree murder as the killing a human being "[w]hen the offender has a specific intent to kill or to inflict great bodily harm." LSA-R.S. 14:10(1) states: "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."

In applying the *Jackson* standard, the Louisiana Third Circuit Court of Appeal noted:

> The defendant's own statement does not support his claim of self-defense. P.J. and Talisha testified about incidents where the victim struck the defendant. Talisha testified the victim hit the defendant in the face with a belt buckle, but that occurred when the defendant was around age six. In the CAC interview, P.J. said his dad and the defendant had fought, but that was when P.J. was "real small," apparently years before the shooting. P.J. also said the defendant and the victim fought by punching each other in the face, but that was when P.J. was five years old, approximately seven years prior to the shooting.
>
> Although the defendant stated he and the victim had problems in their relationship, he used as an example that he did not like the victim making him wash dishes. Although he supposedly moved out of Talisha's home at age sixteen because of the arguments with and unnecessary whippings from the victim, the alleged abuse occurred six years prior to the shooting. The defendant only occasionally spent the night at Talisha's home, and the victim had only lived there for about a month at the time of the shooting. The defendant's testimony establishes he and the victim were only occasionally around each other, and it is unlikely such an acrimonious relationship developed that the defendant would feel sufficiently threatened to believe he had to shoot the victim in order to protect himself.
>
> The defendant explained his "mind is just messed up." He simply reacts to anger; he does not think. He always carried a gun at the time of the shooting, and he bragged to Stephanie Minor about doing so seven years

before the shooting, apparently anticipating violence even then. Although both the defendant and P.J. said the defendant and the victim were fighting, Talisha never said anything about hearing anything other than arguments. She never mentioned noises indicative of wrestling, throwing someone against the dresser, or struggling for a gun as the defendant testified he and the victim did.

Daric Vezia's testimony was validated when police located the gun exactly where he said the defendant told him it would be. Vezia knew things about the incident he could not have known unless someone with intimate knowledge had told him. According to Vezia, the defendant said he was tired of the victim messing with him, and he shot him while they argued about a phone.

Although the defendant claims self-defense, he admitted the victim was not armed. The victim's body showed no evidence of a physical fight. Nothing in the record suggests the defendant had any reason to expect he was facing a life threatening situation during the argument with the victim. The evidence does not support a finding that the defendant shot the victim out of fear for his life. Under these circumstances, the defendant could not have reasonably believed his life was in danger. He never made any effort to extricate himself from the argument or the fight.

Even if the defendant believed the defendant [sic] might physically injure him, there is no evidence that the amount of force used, which resulted in the victim's death, was necessary to prevent the harm. The state met its burden of showing the defendant did not act in self-defense. The jury reasonably found the defendant did not shoot the victim in self-defense. The evidence was sufficient under the *Jackson* standard to support the conviction. The defendant's conviction is affirmed.

*State v. Ceasar*, 14-141 (La. App. 3 Cir. 10/01/14); 149 So. 3d 301, 309-10.

The State argues, and this Court agrees, that other than bald assertions, nothing presented by the Petitioner, to either the state courts or this Court, challenges the fact that the state court correctly identified the legal standard and reasonably applied it to the facts of the case. Accordingly, the Court defers to the ruling of the Louisiana state courts on this claim and recommends that relief be denied.

2. **Petitioner claims that his trial was rendered fundamentally unfair as a result of prosecutorial misconduct in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.**

Petitioner's next claim of prosecutorial misconduct can be divided into three broad categories: (1) that the prosecution "mischaracterized and manipulated" the facts in opening statements and closing arguments to put the Petitioner in the "worst possible light;" (2) that the prosecution intentionally used false testimony or allowed false testimony to go uncorrected in violation of *Napue v. Illinois*, 79 S.Ct. 1173 (1959); and (3) that the state courts allowed the prosecution to declare the Petitioner's mother a hostile witness in violation of State evidence law.

This claim was initially raised in the Petitioner's application for post-conviction relief. The Third Circuit, finding that the trial court erred in failing to consider the prosecutorial misconduct claim, remanded this claim for consideration. *State v. Ceasar*, 16-824 (La. App. 3 Cir 07/12/17), 224 So. 3d 1226, 1229. On remand, the State argued that while the Petitioner made allegations of various constitutional violations, he failed to demonstrate how the incidents prejudiced him or violated his due process rights. Doc. 13, att. 8, p. 14. Relying on La. C.C.P. Art. 930.3, the State argued that because the defense attorney failed to object to the alleged violations, the error is waived. *Id*. The State further argued that even if the Petitioner's arguments were accompanied by objections, the complained of instances are not indicative of prosecutorial misconduct. *Id*. Regarding the first complaint, that the prosecutor referred to the victim as a "very good man" in his opening statement, the State cited to *State v. May,* 94-1205 (La.App. 4 Cir. 4/26/95), 654 So.2d 829, 832 in which the court, relying on Article 766 of the Louisiana Code of Criminal Procedure, examined the scope of an opening statement:

> A trial court's rulings concerning the scope of an opening statement should not be disturbed absent a manifest abuse of discretion. *State v. Deboue*, 496 So.2d 394, 403 (La.App. 4 Cir.1986), *writ denied,* 501 So.2d 229 (La.1987).

The *Deboue* court set forth the standard for ascertaining manifest abuse of discretion:

> If the appellate court finds that the prosecutor's argument contained improper remarks, a reversal is warranted only if the court is thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict. [Citation omitted.] Credit should be accorded to the good sense and fairmindedness of jurors who have heard the evidence. [Citations omitted.]

*Deboue*, 496 So.2d at 403.

*State v. May*, 654 So.2d at 832.

The State argued that the petitioner in this matter failed to demonstrate how this part of the opening statement was an abuse of discretion. Nothing shows that the jury was influenced by the remarks or that they contributed to the verdict, and, in fact, the petitioner admitted that these remarks were made *after* the prosecutor told the jury that what he says as a prosecutor is not evidence in this matter.

With respect to the next assertion, that the prosecutor intentionally mischaracterized the facts and details of the case to portray the petitioner in a negative light, committing prosecutorial misconduct, the State, relying on Louisiana jurisprudence, correctly argued that when the defense is allowed to correct an error made by the prosecution in opening statement, there is no error. *Id*. *State v. May*, 654 So.2d at 832 (*citing State v. Carter*, 572 So.2d 1131, 1135 (La. App. 1 Cir. 1990)). In the instant matter, the State pointed out that Petitioner's attorney, in his opening statement clearly corrected the prosecution's factual misstatements.

Finally, Petitioner complained that the present wife of the victim was not truthful during her testimony when she stated that the victim did not have a temper. The State pointed out that he could not offer any relevant evidence to counteract the witness' specific testimony that the victim

never hit her or her children, nor was there any evidence that the witness was not truthful during her testimony. *Id.*

On October 12, 2017, the trial court again denied Petitioner's application for post-conviction relief on the issue of prosecutorial misconduct. Doc. 13, att. 9, p. 33. The Third Circuit denied his application for writs on June 22, 2018, interpreting the trial court's ruling as a denial of Petitioner's claims on their merits. *Id*. at p. 35. The Louisiana Supreme Court ultimately denied writs on this issue on November 14, 2018. *Id*. at p. 36.

This claim was properly found to be without merit by the state district court, a decision affirmed by the Third Circuit and the Louisiana Supreme Court. The Petitioner has failed to establish that the state court decision was either an unreasonable application of, or contrary to clearly established federal law, and as such, this claim should be denied.

### 3. Petitioner claims he was denied effective assistance of counsel at trial in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution

In his third claim for relief, the Petitioner asserts that he was deprived of his right to testify by his attorney, who "took it upon himself to waive Ceaser's right to testify without discussing the matter with him." Doc. 1, p. 9. The trial court found that counsel's suggestion that Petitioner should not testify fell within the scope of trial strategy. *State v. Ceasar*, 16-824 (La. App. 3 Cir 07/12/17), 224 So. 3d 1226, 1229. Further, the trial court found that Petitioner did not show that his counsel's actions were unreasonable or that he was prejudiced by his decision. *Id.*

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair

trial. *Id.* at 2064. The first prong does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at 2065) (quotations omitted). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 104 S.Ct. at 2055–56. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2056. In other words, the petitioner must show prejudice great enough to create a substantial, rather than conceivable, likelihood of a different result. Pape v. Thaler, 645 F.3d 281, 288 (5th Cir. 2011) (*quoting Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011)). "Both of [*Strickland's*] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566–67 (5th Cir. 2014).

"A criminal defendant has a fundamental constitutional right to testify on his own behalf." *Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir. 1994) (citing *Rock v. Arkansas*, 107 S. Ct. 2704, 2708-10 (1987)). "This right is granted to the defendant personally and not to his counsel." *See id. (citing Rock*, 107 S. Ct. at 2709). The Fifth Circuit has recognized that a defendant may waive his right to testify, and that defendants frequently do so on the advice of counsel. *Id.* There is no violation of the right to testify where the defendant agreed during trial with his attorney's

recommendation that he not testify, even if the defendant decides later, in hindsight, that he should have testified. *Id.*

Petitioner claims his attorney made the decision that he would not testify, a decision that he alone had the authority to make. However, he concedes that he "was not asked if he wished to testify in his own defense." Doc. 1, att. 2, p. 31. As summarized by the Third Circuit:

> In support of his claim, Relator points to a transcript excerpt from an objection raised at trial during the testimony of the victim's estranged wife, Linda Myles. When defense counsel asked Ms. Myles whether she knew of the victim's criminal record, the prosecutor objected. During the course of the ensuing colloquy about the victim's prior bad acts/crimes, defense counsel mentioned his desire to present evidence of a child protection investigation stemming from the victim hitting Relator in the face with a belt. The prosecutor responded that the State could then present information that Relator sexually abused people living in the house with him and that it could provide reports, opening up the "whole can of worms." To this, defense counsel responded, "**Not if my client doesn't testify.**"

224 S.2d at 1229 (emphasis added).

Petitioner relies on *McCoy v. Louisiana*, 138 S.Ct. 1500, 200 L.Ed.2d 821 (2018), for the proposition that the decision to testify was his alone, a position which was not contested in either the state or these instant proceedings. The record confirms that Petitioner elected to follow his counsel's advice and not testify on his own behalf. To the extent that he chose not to testify based on his counsel's advice, he cannot show that he was denied his constitutional right to testify. *See Jordan*, 34 F.3d at 312. The Court finds that the Petitioner has not shown that his defense counsel's strategic decision to not put him on the witness stand was deficient or that the state habeas corpus court unreasonably denied this claim. Accordingly, Petitioner is not entitled to relief on this claim under 28 U.S.C. § 2254(d).

**4. Petitioner claims that he was denied his right to counsel at his arraignment in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.**

Next, Petitioner contends that he was deprived the assistance of counsel at a necessary phase of the proceedings against him when he was arraigned on his criminal charges without counsel being present.  He claims that although he waived his attorney's presence at his November 22, 2010, arraignment, he did not do so voluntarily, knowingly, or intelligently, which was required because arraignment is a critical stage of the proceedings.

In upholding the state district court's decision, the Third Circuit relied on the minutes of the trial court which established that Petitioner waived his right to have an attorney present and also noted that, in Louisiana, arraignments are not a critical stage of proceedings which require the presence of counsel.  224 So. 3d at 1232.  Petitioner incorrectly argues that this decision is contrary to clearly established federal law.  Doc. 1, att. 2, p. 31.

In making its decision, the Louisiana Third Circuit cited to its own prior decision in *State v. Tarver*, 02-973 (La.App. 3 Cir. 3/12/03), 846 So. 2d 851, *writ denied*, 03-1157 (La. 11/14/03), 858 So. 2d 416, in which the defendant was present for arraignment without counsel and entered pleas of not guilty. The court held that arraignment was not a critical stage requiring the presence of counsel.  *Tarver*, 846 So.2d at 856-58.

The Third Circuit in this matter held:

> Similarly, in the present case, arraignment was not a critical stage of the proceedings. *Tarver*, 846 So.2d 851. As in *Tarver*, Relator entered a plea of not guilty, and he was subsequently represented by counsel at trial and sentencing. Accordingly, this claim has no merit.

224 So. 3d at 1232.

For the same reasons expressed in *Tarver, supra.*, the Louisiana Third Circuit Court of Appeal has correctly concluded that as his arraignment was not a critical stage of the proceedings

against the Petitioner under the circumstances of this case, an attorney need not have been present. Further, the Petitioner has brought forth nothing to challenge the state district court's denial or substantiate his claim that when he waived the presence of an attorney at his arraignment, the waiver was not knowing and voluntary. For either or both of these reasons, this claim should be dismissed.

**5. Petitioner claims he was deprived of his right to present a complete defense in violation of the Sixth and Fourteenth Amendments to the United States Constitution.**

Petitioner next contends that the state district court erred in excluding certain specific-act character evidence from admission at trial under Louisiana Code of Evidence article 404B. Specifically, the Petitioner contends that he should have been allowed to introduce evidence that the victim in this matter had been convicted of battery and battery of a police officer ten years prior to the date of the instant offense and that by excluding that evidence, the state district court deprived him of his right to present a complete defense.

To the extent that the Petitioner is arguing that the State district court improperly applied Louisiana evidence law to exclude this character evidence, or misapplied the state aggressor doctrine, such a claim is not cognizable in a federal habeas corpus petition. *Panzavecchia v. Wainwright*, 658 F.2d 337, 340 (5th Cir.1981) ("Mere violation of evidentiary rules by the state trial court does not in itself invoke habeas corpus relief."). An error in a state trial does not justify habeas relief unless it is of such a magnitude as to render the trial fundamentally unfair, and, to that end, violative of due process. *Bronstein v. Wainwright*, 646 F.2d 1048 (5th Cir. 1981); *Anderson v. Maggio*, 555 F.2d 447 (5th Cir. 1977).

To the extent that the Petitioner is arguing that his *federal* constitutional right to present a defense has been violated by the state district court's rulings, however, this argument fails.  The

state district court denied this claim without specific elaboration, simply noting the Petitioner had failed to set forth a claim for which relief could be granted. In its initial review, the state intermediate appellate court simply found no error in the trial court's ruling.  It was not until subsequent actions, discussed below, that the state appellate court addressed the merits of this claim directly, noting:

> The trial court did not completely bar the introduction of the evidence regarding the character of the victim Relator contends should have been admitted, it simply denied admission though a specific witness who had no knowledge of the events. Appellate counsel cannot be ineffective for failing to raise a La. Code. Evid. art. 404(B) issue when the trial court did not prohibit the introduction of said evidence.

*State v. Caesar*, 2021-265 (La.App.3rd Cir. 6/3/21) (unpub); doc. 13, att. 17, p. 3.

In the instant matter, Petitioner contends that he was prevented from presenting an affirmative defense of justifiable homicide, an allegation the Respondent refutes.  The State points out that Petitioner successfully introduced evidence of prior acts of violence by the victim on the Petitioner to show Petitioner feared receiving great bodily harm or death. Petitioner was merely precluded from introducing *additional*, ten-year-old acts through a witness who had no personal knowledge of them.

We agree with the State's contention that the Petitioner's justification defense did not fail for want of introduction of character evidence against the victim. As the Third Circuit noted in its direct review of Petitioner's conviction, "[e]ven if the defendant believed the [victim] might physically injure him, there is no evidence that the amount of force used, which resulted in the victim's death, was necessary to prevent the harm."  *State v. Ceasar*, 14-141 (La. App. 3rd Cir. 10/01/14); 149 So. 3d 301.  Nothing in the evidence which the Petitioner sought to introduce would have refuted that. It was why he could not show prejudice in Claim Six (discussed below) and how, we conclude, he was not denied due process by the exclusion of this evidence.

6. **Petitioner claims that he was denied the effective assistance of counsel on appeal in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.**

Finally, Petitioner claims he was denied the effective assistance of counsel on appeal when his appellate lawyer did not challenge the exclusion of the character evidence at issue in Claim Five, discussed above, during the direct appeal of his conviction and sentence.

Ineffective assistance of counsel claims were addressed generally, above, but where, as here, the claim of ineffective assistance of counsel is based on failure to raise an issue on appeal, the prejudice prong of the *Strickland* test requires a petitioner to establish that the appellate court would have granted relief had the issue been raised. *United States v. Phillips*, 210 F.3d 345, 350 (5th Cir. 2000). The state courts found that Petitioner failed to make this showing and, therefore, failed to establish the required prejudice to be granted relief under *Strickland.*

In denying this claim, the state appellate court ruled that the Petitioner failed to establish that the appellate court would have granted relief had the issue been raised. As noted above, the state appellate court further noted that the trial court had not actually prohibited the introduction of the character evidence as such, only the attempt to do so though the witness currently on the stand who had no first-hand knowledge of it. Thus, they also concluded that Petitioner's appellate counsel was not deficient for failing to address the claim. Even if the character evidence had established a reasonable fear of death, it should again be noted (as the appellate court did on Petitioner's direct appeal) nothing presented established the killing of the victim was necessary. Either of these findings was sufficient to deny relief.

We find that Petitioner has failed to establish that the state court's decision on this claim was either an unreasonable application of or contrary to clearly established federal law. Accordingly, this claim should be dismissed

**IV.**

**CONCLUSION**

Based on the foregoing, **IT IS RECOMMENDED** that the instant petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Chambers this 1st day of November, 2022.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE